## BLAINE LUNDEEN v. JOSEPH RENTERIA.

224 N. W. 2d 132.

November 8, 1974—No. 44469.

*Gartner, Burkhardt & Shulman, David A. Shulman,* and *Peter D. Ekstrand,* for appellant.

*R. Scott Davies,* City Attorney, and *Pierre N. Regnier,* Assistant City Attorney, for respondent.

Heard before Kelly, Yetka, and McRae, JJ., and considered and decided by the court en banc.

PER CURIAM.

This action for false arrest or false imprisonment was brought by plaintiff, Blaine Lundeen, to recover damages arising out of an arrest for disorderly conduct made by defendant, Joseph Renteria, on September 6, 1970, at the KSTP television station in St. Paul, Minnesota. At the close of plaintiff's case to the jury relative to proof of liability, the trial court directed a verdict for defendant, ruling that as a matter of law defendant had probable cause to make the arrest. Plaintiff appeals from denial of his motion for a new trial. We affirm.

On Sunday, September 6, 1970, plaintiff and his 15-year-old son were driving to St. Paul to attend the Minnesota State Fair when they made a wrong turn and found themselves at the KSTP television station in St. Paul. Being a candidate for the House of Representatives from the First Congressional District, plain-

tiff thought he could take advantage of the situation to obtain publicity for his campaign.

KSTP had hired Pinkerton guards because of the bombings which had occurred in St. Paul during the weeks immediately preceding the day of this incident. Plaintiff and his son went to the rear of the station and approached the Pinkerton guard stationed there. Plaintiff testified that he explained his reasons for being there to the guard, i.e., that he was running for Congress, that part of his platform dealt with the ease of entering and sabotaging communication centers and electrical plants, and that he was interested in publicity. Plaintiff then showed the guard a stick of dynamite which he used as a prop in his campaign speeches.

From this point, the events are not without conflict in the record, but it was plaintiff's testimony that, while still holding the stick of dynamite, he and his son were allowed by the guard to proceed through the rear door of KSTP, where he met and conversed with the station owner and several other newsmen with regard to his purpose for being there.[1] During this conversation, his son took the stick of dynamite back to his car.

Defendant, who is an officer with the St. Paul Police Department, and another officer then arrived at KSTP and obtained possession of the stick of dynamite, which had been retrieved by the Pinkerton guard. Following a conversation among plaintiff, the owner of KSTP, newsmen, and the police officers, cameramen were called to film plaintiff on the subject of his candidacy and his platform. Plaintiff and defendant each held one end of the stick of dynamite during the filming which lasted about 20 minutes.

Following the filming, defendant escorted plaintiff to a squad car and directed him to sit inside. Plaintiff and his son remained there with defendant until a radio message was received on the

---

[1] On review of a verdict directed for the defendant, evidence will be considered in light most favorable to plaintiff. Johnson v. Theo. Hamm Brewing Co. 213 Minn. 12, 4 N. W. 2d 778 (1942).

squad car's radio, at which time defendant proceeded to read the Miranda warnings to plaintiff. After he was frisked and the trunk of his car searched, plaintiff was taken to the St. Paul police station where he was photographed and fingerprinted. He was charged with disorderly conduct and released on his own recognizance.

This action for false arrest and false imprisonment went to trial on March 19, 1973, and the trial court's directed verdict was entered on March 21, 1973. Plaintiff served notice on defendant of "the filing of the decision of the directed verdict order" (i.e., entry of judgment) on May 4, 1973, and served the notice of motion and motion for a new trial on defendant on May 9, 1973.

1. The preliminary issue, raised on appeal by defendant, is whether plaintiff's notice of motion for a new trial was timely under Rule 59.03, Rules of Civil Procedure. Defendant contends that the trial court was without jurisdiction to hear plaintiff's motion for a new trial, and therefore its order denying the new trial was invalid, leaving no order from which plaintiff may appeal. This claim is predicated upon the argument that a directed verdict comes within the meaning of "general verdict," as used in Rule 59.03,[2] after which a maximum period of 15 days is allowed for service of notice of motion for a new trial. Plaintiff served notice well beyond this 15-day period. Plaintiff contends that a directed verdict is a "decision or order" within the meaning of Rule 59.03, and since plaintiff served its notice of motion within 15 days of its service of notice of the "filing of the decision of the directed verdict order," the motion for a new trial was properly before the trial court.

The trial court, in its memorandum accompanying the order

---

[2] Rule 59.03 provides: "A notice of motion for a new trial shall be served within 15 days after a general verdict or service of notice by a party of the filing of the decision or order; and the motion shall be heard within 30 days after such general verdict or notice of filing, unless the time for hearing be extended by the court within the 30 day period for good cause shown."

denying the motion for a new trial, was of the opinion that the motion was untimely because the directed verdict is a general verdict within the meaning of Rule 59.03. He nevertheless denied the motion on its merits.

The reason that Rule 59.03 excepts general verdicts from those cases requiring notice from the adverse party in order to start the time running for the motion for a new trial, is that a general verdict does not look toward a further decision or order by the trial judge prior to the time that it is an effective conclusion to the litigation. See, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., Advisory Committee Note to 1968 Amendment, p. 756. Rule 58.01 constitutes a general standing instruction to the clerk to enter judgment forthwith where the jury has returned only a general verdict, or upon an order of the court that all relief be denied.[3]

Whether the directed verdict in this case be characterized as a general verdict, or merely as a decision by the court to deny all relief to plaintiff, it seems clear under the local practice that the judge did not have in contemplation any subsequent judicial act of pronouncing judgment in a more formal manner. Therefore, under Rule 59.03, the new trial motion was required to be served within 15 days after the date of the directed verdict. Rule 6.02 does not authorize the 15-day period to be enlarged or extended, and if a party permits the 15-day period to expire, the trial judge lacks power to grant relief for such error. See, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 754.

Apparently, however, plaintiff believed that the judgment, rather than the verdict, constituted the effective conclusion to the litigation, a belief not entirely without justification. The court's action may have seemed equivocal from plaintiff's view-

---

[3] Rule 58.01 provides in part: "Unless the court otherwise directs, and subject to the provisions of Rule 54.02, judgment upon the verdict of a jury, or upon an order of the court for the recovery of money or for costs or that all relief be denied, shall be entered forthwith by the clerk * * *."

point, since judgment on the directed verdict was not promptly entered (even though entry or nonentry of judgment is of no legal significance so far as the propriety of the motion for a new trial is concerned).[4]

For this reason, we have decided to consider the appeal on the merits even though plaintiff's motion technically was untimely under Rule 59.03.

2. The substantive issue to be resolved is whether the lawfulness of plaintiff's arrest by defendant was established as a matter of law. The action for the tort of false imprisonment or false arrest protects the personal interest in freedom from restraint of movement. The restraint may be imposed by the assertion of legal authority, and if an arrest is made without proper legal authority, it is a false arrest, and so false imprisonment.[5] In the context of this case, the essential elements of plaintiff's claim for relief are (1) an arrest performed by defendant, and (2) the unlawfulness of such arrest.[6]

With regard to the first element, plaintiff contends that an arrest is clearly shown by evidence that he was placed in the squad car by defendant who then read the Miranda warnings, and by plaintiff's testimony that he felt he was unable to leave the squad car. Defendant, on the contrary, claims that the evidence shows that plaintiff voluntarily accompanied him to the police station without an arrest having been made.

Plaintiff claims that the second element was established by evidence that at no time were any of the citizens at KSTP annoyed or disturbed by actions of plaintiff.[7] Defendant, on the

---

[4] See, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., Author's Comments to Rule 58.01, p. 593.

[5] Prosser, Torts (4 ed.) § 11.

[6] See, 32 Am. Jur. 2d, False Imprisonment, § 5.

[7] The ordinance under which the plaintiff was charged is St. Paul's Legislative Code, § 438.02, commonly known as the disorderly conduct ordinance, which reads as follows: "No person shall make, aid or countenance, or assist in making any noise, riot, disturbance or im-

other hand, contends that he had probable cause to believe a violation of law was taking place in his presence—he was confronted by a total stranger with a stick of dynamite during a period of time when bombings were occurring almost regularly.

As this court has stated several times:

"It is elementary that a motion for a directed verdict, which by its very nature accepts the view of the *entire* evidence most favorable to the adverse party and admits the credibility (except in extreme cases) of the evidence in his favor and all reasonable inferences to be drawn therefrom, should be granted only in those unequivocal cases where (1) *in the light of the evidence as a whole*, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case." Hanson v. Homeland Ins. Co. of America, 232 Minn. 403, 404, 45 N. W. 2d 637, 638 (1951).[8]

Under this test it would seem that the trial court was correct in assuming, for purposes of the motion for a directed verdict, that plaintiff had established the occurrence of an arrest. Had such a finding been made by the jury, it could not be set aside as being manifestly against the evidence adduced by plaintiff.

The unlawfulness of that arrest, the second element, presents a more difficult question. The statutory authority of a peace officer to arrest a person without a warrant is found in Minn. St. 629.34, which provides in part:

"A peace officer may, without warrant, arrest a person:

"(1) For a public offense committed or attempted in his presence."

In Smith v. Hubbard, 253 Minn. 215, 221, 91 N. W. 2d 756, 762 (1958), it was held that two elements must appear before an of-

---

proper diversion, to the annoyance or disturbance of the citizens, or other persons in said city * * *."

[8] See, also, Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. 2d 688 (1956).

fense is committed in the presence of an officer: "(1) He must become aware of the acts as a result of his sensory perception, and (2) he must infer that the acts constitute an offense." In elaborating on the second of these elements, the court cited from Garske v. United States, 1 F. 2d 620, 622 (8 Cir. 1924), as follows:

"* * * [F]or a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses."

The test, then, for the lawfulness of plaintiff's arrest is whether it was made with "probable cause." The principle of "probable cause for arrest" was discussed at length by this court in State v. Harris, 265 Minn. 260, 264, 121 N. W. 2d 327, 330, certiorari denied, 375 U. S. 867, 84 S. Ct. 141, 11 L. ed. 2d 94 (1963).

"* * * Probable cause for an arrest has been defined to be 'a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.' Garske v. United States (8 Cir.) 1 F. (2d) 620, 623. * * * There is no formula by which to judge the reasonableness of a given case and each must be decided on its own facts and circumstances. * * *

\* \* \* \* \*

"To require a high degree of technical competency on the part of the average police officer, i.e., that expected of the prosecutor, would be an unfair and unreasonable standard."

The evidence in this case shows that defendant was personally familiar with the rash of bombings which had occurred in St. Paul during the weeks preceding plaintiff's arrest. It was with

this background that defendant arrived at KSTP and found plaintiff in possession of a stick of dynamite in the presence of several people. Under these circumstances, a finding that defendant had no probable cause to believe that a violation of law was taking place in his presence would be manifestly against the evidence, and the trial court properly directed the verdict for defendant.

Affirmed.