Catherine PERKINS, et al., Appellants,

v.

COUNTY OF ST. LOUIS, et al., Richard Pence, Charles Perkins, City of Hibbing, Respondents.

No. CX–86–1136.

Court of Appeals of Minnesota.

Dec. 9, 1986.

Review Denied Jan. 16, 1987.

James M. Williams, Minneapolis, for Catherine Perkins, et al.

Barbara A. Russ, Duluth, for St. Louis County.

Robert H. Stephenson, Virginia, for Richard Pence.

Charles Perkins, pro se.

Gary J. Pagliaccetti, Virginia, for City of Hibbing.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

On November 6, 1983, St. Louis County Deputy Scott Lundgren arrested appellants Catherine and Harvey Perkins for trespassing. Another group of law-enforcement officers took appellants to Hibbing City Jail. Appellants sued St. Louis County, Sheriff Ernest Grams, Deputy Sheriff Scott Lundgren, Richard Pence, who claims ownership of the land in question, their son Charles Perkins, and the City of Hibbing for false arrest. In an amended judgment dated June 4, 1986, the trial court granted motions for summary judgment brought by Hibbing, St. Louis County, Grams, Lundgren, and Pence, and entered final judgment in the matter. There is no indication Charles Perkins ever moved for summary judgment. Catherine and Harvey Perkins appeal the granting of summary judgment. We affirm.

## FACTS

Perkins and appellants, his parents, were spending the weekend at a hunting cabin. Appellants had previously lived in a house on the property on which the cabin was located. After the house burned down, a garage was converted into the hunting cabin. On November 5, 1983, Deputy Lundgren responded to a complaint by Perkins with respect to a dispute between Perkins and appellants. Perkins had called the sheriff's department from the home of Richard Pence, who lived across the road from the hunting cabin. Upon Lundgren's arrival at Pence's house, Perkins told Lundgren that appellants had forced him out of the hunting cabin with threats of violence. Pence and Perkins showed Lundgren a copy of a document indicating Pence had leased the land and cabin to Perkins, a warranty deed to Pence purporting to show ownership in Pence of the land in question, and a survey indicating the cabin was on property belonging to Pence.

Lundgren proceeded to the hunting cabin and talked to appellants. Appellants refused to leave the cabin, indicating they thought they had a right to the property. Appellants at no time showed Lundgren any documentary evidence to support an ownership claim to the cabin. Lundgren informed Perkins that appellants would not leave. Because the dispute involved members of one family, Lundgren hoped that the matter could be settled between the parties, and he encouraged discussion. Lundgren and Perkins returned to the cabin, and after some discussion, Perkins and appellants agreed to get along.

Shortly after Lundgren left, Perkins again called the St. Louis Sheriff's Department, complaining that appellants had now thrown him out of the cabin. Perkins requested the sheriff's department to remove appellants from the cabin. The sheriff's department could not respond that evening, and Perkins spent the night at Pence's place.

On November 6, 1983, Perkins again called the sheriff's department and requested that appellants be removed from the cabin. Lundgren responded to the call and went to the cabin. He entered the cabin and asked appellants to leave. When they refused to do so, Lundgren arrested appellants and charged them with trespassing. Harvey Perkins resisted, and respon-

dent Lundgren pulled him off the sofa on which he was sitting, pushed him outside and placed him, handcuffed, in the back seat of the squad car. Subsequently, Lundgren placed Catherine Perkins in the front seat of the squad car. She was not handcuffed.

Lundgren then drove appellants to a location where appellants were transferred into another squad car, which took them to the Hibbing City Jail where they were booked and incarcerated overnight. The criminal charges against appellants were later dismissed.

Appellants brought this action to recover damages for injury to their personal and business reputations, mental and bodily suffering, ridicule and embarrassment, lost income, and legal fees, in addition to punitive and exemplary damages. They appeal the granting of summary judgment to respondents St. Louis County, Grams, Lundgren, Pence, and City of Hibbing.

## ISSUES

1. Did the trial court err by finding that no material issue of fact existed and that summary judgment for respondents was proper?

2. Did the trial court err by finding that Deputy Lundgren had probable cause to arrest appellants for trespass?

## ANALYSIS

### I.

*Material Issue of Fact*

■ On appeal from summary judgment, our function is to determine whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn. 1979).

[A] party cannot rely upon general statements of fact to oppose a motion for summary judgment. Instead, the non-moving party must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Moundsview Independent School District No. 621 v. Buetow & Associates, Inc.*, 253 N.W.2d 836, 838 (Minn.1977).

Appellants assert that whether Deputy Lundgren had probable cause to arrest appellants for trespass under Minn.Stat. § 609.605 (1984) is a fact question. Section 609.605, subds. 5 and 6, state:

Whoever intentionally does any of the following is guilty of a misdemeanor:

\*   \*   \*   \*   \*   \*

(5) Trespasses upon the premises of another and, without claim of right, refuses to depart therefrom on demand of the lawful possessor thereof; or

(6) Occupies or enters the dwelling of another, without claim of right or consent of the owner or the consent of one who has the right to give consent, except in an emergency situation.

The district court found that there was "no question about the factual situation." Perkins showed Deputy Lundgren a deed to Pence, a survey indicating that appellants' original house and the garage were on property belonging to Pence, and a lease from Pence to Perkins. Appellants showed the deputy no written evidence to substantiate their claim to the property. They merely asserted they had a right to be in the cabin. The documents shown to Lundgren, and appellants' refusal to leave, are not in dispute.

Appellants do not point to any specific issues of material fact surrounding the arrest. They argue vigorously that a genuine issue of material fact exists as to their claim of ownership to the property. However, that appellants may have a property claim and that Lundgren knew about it is neither at issue nor material to the matter before this court. Lundgren did not deny that appellants had asserted they owned the land. He admitted he knew they had at one time lived there. The investigation report he filled out after arresting them attests to his knowledge of these facts. Appellants do not deny that Pence and Per-

kins showed Lundgren the deed, survey, and lease, nor do they deny having refused to leave when Lundgren asked them to do so.

Simply put, the validity of appellants' claim of right to the cabin and the land beneath it is not material on this matter, which is the review of the dismissal of a lawsuit for false arrest. We are not reviewing a civil trial court's decision on the merits of appellants' claim of ownership. We are only reviewing the trial court's decision that, on appellants' civil lawsuit for false arrest, there were no genuine issues of material fact. We are only concerned with the question of whether there was an issue of fact with respect to the information available to Deputy Sheriff Lundgren which formed the basis for his probable cause to arrest. Even under the high standard we apply to the review of summary judgment dismissals, we do not find that the trial court either abused its discretion or applied an erroneous theory of law. We affirm the trial court in all respects on this issue.

## II.

*Probable Cause*

■ Under Minn.Stat. § 629.34, subd. 1(c) (1984), a peace officer or constable may arrest a person without a warrant "[w]hen a public offense has been committed or attempted in the officer's or constable's presence." Appellants claim their arrest and subsequent imprisonment were unlawful because Deputy Lundgren did not have probable cause to arrest them.

In the context of a claim for false arrest or false imprisonment, "the essential elements of plaintiff's claim for relief are (1) an arrest performed by defendant, and (2) the unlawfulness of such arrest." *Lundeen v. Renteria*, 302 Minn. 142, 146, 224 N.W.2d 132, 135 (1974). If an arrest is made without proper legal authority, it is a false arrest. Subsequent restraint is false

imprisonment. *Id.* False imprisonment is "any imprisonment which is not legally justifiable." *Kleidon v. Glascock*, 215 Minn. 417, 425, 10 N.W.2d 394, 397 (1943).

All parties agree that appellants were arrested and detained. The precise issue is whether Lundgren had probable cause to arrest appellants. "The test * * * for the lawfulness of plaintiff's arrest is whether it was made with 'probable cause.'" *Lundeen*, 302 Minn. at 148, 224 N.W.2d at 136.

In determining whether Lundgren had probable cause to arrest appellants, we do not decide the merits of appellants' claim to the property.[1] We need only determine whether the trial court properly found that Lundgren acted reasonably and lawfully under the circumstances.

The supreme court has defined probable cause to arrest as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *State v. Harris*, 265 Minn. 260, 264, 121 N.W.2d 327, 330 (1963), *cert. denied*, 375 U.S. 867, 84 S.Ct. 141, 11 L.Ed.2d 94 (1963).

In applying this standard, we should not be overly technical but should accept the officer's reasonable on-the-scene probable cause assessment. *State v. Compton*, 293 N.W.2d 372, 375 (1980).

> Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability.

*Harris*, 265 Minn. at 265, 121 N.W.2d at 331.

A reasonable amount of deference is given to the police officer in determining whether probable cause to arrest existed. Each case must be decided on its own facts, "guided not by any magic formula but by

---

**1.** It is theoretically possible that in a later civil lawsuit appellants could succeed in proving ownership rights against Pence. Such a decision would not be retroactive and would not affect the issue of false arrest before the trial court and this court.

the standard of reasonableness." *Compton,* 293 N.W.2d at 375.

Lundgren acted in response to Perkins' complaint that appellants kicked him out of his leased cabin. Perkins provided a lease running in his favor, a survey and a deed to Pence, the lessor, and Pence's on-the-spot statement that he was the owner of the cabin in question and had leased it to Perkins. Appellants did not document their claim of ownership. Lundgren received three complaints from Perkins. He did not at first arrest appellants, but gave the parties an opportunity to informally solve the problem between themselves. When this did not work out, Lundgren was called again by Perkins and, as a peace officer, had to make an on-the-spot decision whether to arrest appellants. We hold that under the circumstances, Lundgren could reasonably have believed appellants were trespassing, and the arrest and subsequent imprisonment were based on probable cause.

### DECISION

Summary judgment was appropriate where there were no genuine issues of material fact surrounding the circumstances of the arrest. The trial court properly found that sufficient probable cause supported appellant's arrest for trespass.

Affirmed.