Jon Clifford JOHNSON, et al., Respondents,

v.

Ronald MORRIS, individually and as police officer in the Lakefield Police Department, et al., Respondents,

Steven Van Hal, individually and as Deputy Sheriff in the County of Jackson, et al., petitioners, Appellants,

State of Minnesota, Defendant.

No. C8–88–2614.

Supreme Court of Minnesota.

March 23, 1990.

Ruth Ann Webster, Gislason, Dosland, Hunter & Malecki, New Ulm, Kelton Gage, Blethen, Gage & Krause, Mankato, for appellants.

John C. Hottinger, Hottinger Law Offices, Mankato, for respondents.

KELLEY, Justice.

By this action respondent Jon Johnson seeks damages under 42 U.S.C. § 1983 for alleged violation of his federal civil rights

by three law enforcement officers.[1] Additionally, he seeks damages on various state tort claims. The three officers and their governmental employers were originally named as defendants.[2] Following discovery the trial court eventually granted summary judgment on both Johnson's federal and state tort claims to the six named defendants. On appeal, summary judgment in favor of all defendants except Van Hal was affirmed; but the summary judgment in favor of Van Hal on both the federal and state claims was vacated and remanded for trial. *Johnson v. Morris*, 445 N.W.2d 563 (Minn.App.1989). We granted Van Hal's petition for further review. We now reverse the court of appeals' decision reinstating Johnson's 42 U.S.C.1983 claims and his state claims against Van Hal with the exception of his state assault claim which we remand to the trial court for trial.

Respondent Jon Johnson, a farmer residing in Lakefield, Minnesota, had been planting soybeans late at night on June 7, 1984. About 2 a.m. he left the field driving a pickup truck towing a gravity box wagon containing soybean seed. His route from the field to his farm home took him through the City of Lakefield. As he drove past a gas station in Lakefield, he passed three parked police squad cars belonging to Officers Van Hal, Waldron, and Morris. At the time Van Hal commented to the other two officers about the unusualness of a pickup truck pulling a gravity box at that hour of the night, and speculated to the others whether a grain theft might be in progress.[3] Morris, in addition to noting that it was a strange time of the night for a vehicle to be pulling a gravity box wagon, also decided to pull the vehicle over because he believed it was missing lights and reflectors which complied with state re-quirements. Morris then followed the rig through town, and shortly thereafter pulled it over by activating his mars lights.[4]

Morris first asked for Johnson's driver's license to which Johnson replied that he had been working late, was not carrying a driver's license, and did not intend to change that practice. The discussion between the two thereafter became somewhat heated about whether Morris was going to issue Johnson a ticket for not having a driver's license and, perhaps also, for not having proper legal reflectors on the wagon box. The discussion culminated when Johnson got back in his truck, told Morris that if he intended to issue a ticket "You know where to find me" and drove off, apparently heading for his home. After Johnson took off, Morris tried to force him to stop, and, additionally radioed for assistance from the two officers still in Lakefield.

As Johnson left the city limits, he increased his speed to about 23 m.p.h. However, Morris, all the time with his red squad lights activated, eventually managed to catch and pass Johnson after which he attempted to maneuver Johnson toward the shoulder by crowding his rig with the squad car. Instead of stopping or moving toward the shoulder, Johnson sought to occupy the center of the road and attempted to repass the squad car. Thus, the two vehicles proceeded down the road, alternately in tandem or side by side, with each maneuvering by acceleration or deceleration with speeds between 10 and 30 m.p.h., during the course of which, Johnson's truck made contact with Morris's squad car.

Meanwhile, Van Hal and Waldron had responded to Morris's call for assistance. They arrived upon the scene shortly after the chase had commenced and observed

---

1. Actually both Jon Johnson and his wife, Linda, asserted claims, but since Linda's claims are largely derivative, we will refer to Jon Johnson as the respondent.

2. The original defendants were Deputy Sheriff Van Hal and his employer, Jackson County; Officer Ronald Morris and his employer, The City of Lakefield; and Chief of Police Dennis

Waldron and his employer, the City of Heron Lake.

3. There existed some history of grain thefts in the area in recent years.

4. The parties have varying recollections as to what thereafter occurred. In our recital of the facts, we generally have adopted, as did Van Hal on this appeal, Johnson's version.

Johnson's efforts to pass Morris, the bumping of the two vehicles, and the alternate acceleration and deceleration as the two vehicles proceeded down the road. The two officers joined in Morris's attempt to stop Johnson. Van Hal got along the right side of the Johnson vehicles while Waldon stayed at the rear. Eventually, with Morris still in front of Johnson and Waldon behind, the three officers had Johnson "boxed in" and were able to re-stop him.

Johnson claims that after he was stopped on this occasion and had stepped down from the truck, Van Hal fired several shots at the tires of the pickup flattening two of them. Right after the shots were fired, Waldron ordered Johnson to place his hands against the side of the pickup. About the same time, Van Hal emerged from the back of the gravity wagon, aimed his revolver at Johnson's head and urged him to "get your hands up or I'll shoot" to which Johnson responded, "Go ahead and shoot." Johnson was then formally arrested and handcuffed by Van Hal.

Although he then made no complaint to Van Hal, Johnson later claimed to others that he felt some pain when cuffed, and claims that in the cuffed condition, he was pushed and shoved to Waldron's squad car in which he ultimately rode to the police station. At the police station he showed his bruised wrists to Van Hal. Johnson's doctor opined that Johnson "most likely" has "intermittent compression of the nerve causing symptoms without persistent or ongoing nerve damage." Additionally, both Johnson and his wife claim to have suf-fered emotional distress from the incident and the resulting litigation.[5]

Before commencing our analysis of Johnson's claims, it seems appropriate to note precisely the limits of our inquiry. First of all, we are not here concerned with the actions of Waldron and Morris: judgment has been entered in their favor and they are out of the case. The only remaining defendant is Van Hal. We must focus solely on his conduct and direct that focus to the time after he arrived at the scene in response to Morris's call for assistance. Secondly, we must concentrate on Johnson's actions *after* he began to flee following the original stop by Morris and how those actions would reasonably appear to one such as Van Hal coming upon the scene.[6]

(1) With those caveats in mind, we turn to consider whether Van Hal was entitled to summary judgment on Johnson's 42 U.S.C. § 1983 claims. Our analysis of this broad issue requires that we first determine whether Johnson stated recognizable causes of action under 42 U.S.C. § 1983—to-wit, a violation of a right under the Constitution or law of the United States, not under the Constitution or a law of the State of Minnesota, and, secondly, if so, whether Van Hal had a qualified immunity from suit by Johnson.

■ (a) To state a claim under 42 U.S.C. § 1983, a claimant must allege that the defendant(s), acting under the color of state law, violated his or her rights under the federal constitution or a federal stat-

---

5. This civil action was preceded by a criminal action in which Johnson was charged with driving without proper reflectors and fleeing a police officer. The jury found Johnson guilty of the latter charge. The conviction was reversed by the court of appeals because the trial court had failed to instruct on the essential element of intent. *See State v. Johnson,* 374 N.W.2d 285 (Minn.App.1985), *pet. for rev. denied,* (Minn. Nov. 18, 1989). Upon remand to the trial court the criminal charges were disposed of by plea negotiation without further proceedings.

6. By fleeing from that initial stop, Johnson appeared to have committed a gross misdemeanor—fleeing a peace officer in a motor vehicle in violation of Minn.Stat. § 609.487, subd. 3 (1988). By making contact with his truck against Morris's squad car, he also appears to have committed assault in the fifth degree, a misdemeanor. Minn.Stat. § 609.224 (1988). In addition to those apparent crimes, arguably it might have reasonably appeared that Johnson might be charged with attempted assault in the second degree, a felony. *See* Minn.Stat. § 609.222 (1988) which prohibits an assault with a "dangerous weapon" which, in turn, is defined in Minn.Stat. § 609.02, subd. 6 (1988) as a "device * * * that in the manner it is used * * * is calculated or likely to produce death or great bodily harm." Apparently, here, however, the bumping of the squad car with the truck was of insufficient magnitude to have led the officers to believe Johnson's intent was to intentionally inflict any bodily injury.

ute. 42 U.S.C. § 1983. Johnson's amended complaint alleges "deprivation of rights * * * secured to him by the First and Fourteenth Amendments to the Constitution of the United States." [7]

(i) Probable Cause. As we address Johnson's lack of probable cause to make an arrest claim, we note the issue is not whether probable cause existed as of the time the three officers observed Johnson driving through Lakefield. Rather, the focus is directed to the time that Van Hal joined the chase and whether he, himself, had probable cause to arrest Johnson after he had observed him fleeing from Officer Morris following the initial stop near the edge of Lakefield.

Whether probable cause to arrest exists depends upon "whether the objective facts are such that under the circumstances 'a person of ordinary care and prudence (would) entertain an honest and strong suspicion' that a crime has been committed." *State v. Johnson*, 314 N.W.2d 229, 230 (Minn.1982) (quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn.1978)). However, "the fact that it later turns out that the officers were wrong does not mean they did not have probable cause at the time they made their assessment." *State v. Johnson*, 314 N.W.2d at 230. Ordinarily, in a 42 U.S.C. § 1983 action the probable cause issue is for jury resolution. *Cf., e.g., McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984). But when the facts surrounding the incident can lead to but one conclusion, the court may resolve the issue as a matter of law. *See Lundeen v. Renteria*, 302 Minn. 142, 147, 224 N.W.2d 132, 135 (1974) (trial court directed verdict on probable cause to arrest affirmed).

■ When we consider the situation which faced Van Hal when he responded to Morris's call for assistance, we agree with the courts below and are left with no doubt that he had probable cause to arrest Johnson. Morris's radio transmission for assistance had informed Van Hal only that the driver of the pickup he had stopped "got back in and took off." [8] He knew nothing about what transpired during Morris's original stop or why Johnson drove off in his pickup. When he responded to the call, the communication over the radio was corroborated by his own visual observations at the scene that Morris, with the squad car's red lights flashing, was trying to stop the pickup, which, notwithstanding his efforts, continued to proceed, and, in fact, came in contact with the squad car while making evasive maneuvers in an apparent attempt to pass the Morris squad car. From these objective facts, a police officer of ordinary prudence could conclude that Johnson was fleeing an officer, which, of course, is a gross misdemeanor. Minn.Stat. § 609.487 (1988). That statute defines "flee" as "to increase speed * * * or to use *other means with intent to attempt to elude a peace officer following a signal given by any police officer to the driver of a motor vehicle.*" Minn.Stat. § 609.487, subd. 1 (1988) (emphasis added). Van Hal had probable cause to make the arrest of Johnson as a matter of law, and, therefore, the trial court's entry of summary judgment on this claim was appropriate.

---

**7.** Without further specificity, the amended complaint merely alleges deprivation of "rights, privileges and immunities" secured him by those two amendments. The complaint contains no reference to the Fourth or Fifth Amendment, although arguably his specific claims of lack of probable cause to arrest, false arrest, and false imprisonment are more appropriately based on the Fifth Amendment, and, of course, his specific claim of "use of excessive force" purports to state an unreasonable "seizure" claim under the Fourth Amendment. However, we do not deem this failure to specifically designate the appropriate amendment under which the asserted claim is made to be fatal if the facts alleged, in fact, do state a claim. *See*

*Elwood v. Rice County*, 423 N.W.2d 671, 675 (Minn.1988) (citing *Henry v. Minneapolis*, 512 F.Supp. 293, 295 (D.Minn.1981)); *see also Landrum v. Moats*, 576 F.2d 1320, 1325 (8th Cir.), *cert. denied sub nom. Moats v. Landrum*, 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978). In this opinion we address the issues as if Johnson had pled a Fourth or Fifth Amendment violation.

**8.** An officer is entitled to rely on information from other sources in "the police network." *State v. Conaway*, 319 N.W.2d 35, 40–41 (Minn. 1982).

(ii) Moreover, because Van Hal had probable cause to arrest, Johnson has no claim for false arrest or false imprisonment. An officer may make a warrantless arrest for a "public offense" committed in the presence of the officer. Minn.Stat. § 629.34, subd. 1(c)(1) (1988). "Public offense" includes both misdemeanors and felonies, and need not involve a breach of peace. *Smith v. Hubbard,* 253 Minn. 215, 221, 91 N.W.2d 756, 761 (1958). If probable cause to arrest exists, the subsequent arrest is lawful and there is no cause of action for false arrest or false imprisonment. *Lundeen v. Renteria,* 302 Minn. 142, 148, 224 N.W.2d 132, 135 (1974). Thus, summary judgment was appropriate on the false arrest and false imprisonment claims against Van Hal.

(iii) Excessive Force. The use of excessive force by a police officer in making an arrest may furnish the basis for a claim under 42 U.S.C. § 1983. *Graham v. Connor,* 490 U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A claim of use of excessive force is to be reviewed for its reasonableness as a seizure of the person under the Fourth Amendment. As explained by the United States Supreme Court, the "reasonableness" of a seizure turns on:

[a] careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake. * * * Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it. * * * Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' * * * however, its proper application requires careful attention to the facts and circumstances of each particular case, *including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.*

*Graham,* 490 U.S. at ——, 109 S.Ct. at 1871–72, (citations omitted) (emphasis added). Furthermore, the " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at ——, 109 S.Ct. at 1872.

Johnson claims that acts of Van Hal which constitute excessive force are the pursuit, Van Hal's shooting the truck tires, his handcuffing, and his threat of force by pointing his service revolver at Johnson's head while ordering him to place his hands on top of his head.

Counsel have cited no cases holding that mere pursuit, without more, constitutes the exercise of unreasonable force which would violate the Fourth Amendment, nor have we located any supporting authority for such an assertion. Even if Morris's initial pursuit was unreasonable because Morris knew Johnson and knew where he lived, as Johnson claims, Van Hal, when he joined the pursuit, had none of this information available to him.

In retrospect, even though we agree that Van Hal's shooting of the truck tires appear to be a wanton, unnecessary, and unreasonable act, it does not follow that the conduct constituted such an excessive use of force as to amount to an "unreasonable seizure" of the person within the protection of the Fourth Amendment. Johnson was not threatened personally by the shooting; he admits he was standing outside the truck when the shots were fired and that the shooting was not directed at, nor did it directly threaten, him personally. *See* Minn.Stat. § 609.066(1) (1988) (defining deadly force). Thus, notwithstanding the lack of any necessity for the shooting, and recognizing that Johnson may have other remedies against Van Hal for any damage done to the tires not pursued by him in this action, the shooting does not constitute "unreasonable seizure" within the contemplation of the Fourth Amendment.

Had Van Hal used "excessive force" in handcuffing Johnson, its use may have triggered a Fourth Amendment violation

under 42 U.S.C. § 1983. The question is whether the force used was "unreasonable" when considered in the light of the existing circumstances at the time. The Supreme Court of the United States has prescribed a fact-based analysis for determining the reasonableness of the force employed by the officer. *Graham*, 490 U.S. at ——, 109 S.Ct. at 1872. One prong of that analysis is to determine whether the suspect, here Johnson, appeared to be resisting arrest or attempting to flee. As indicated, probable cause existed that Johnson was doing both. In such a circumstance, the officer making an arrest obviously may use reasonable, necessary force to effect the arrest, so the mere fact the handcuffs were applied with some force, standing alone, does not support the claim. Rather, the issue is whether, when considered in the light of all the circumstances, the amount of force *applied* was reasonable. The evidence in this case leaves us with doubt as to whether whatever force Van Hal may have employed, as a matter of law, could be held to have been unreasonable. At the time the handcuffs were applied, Johnson voiced no complaint about the force used by Van Hal, and only extremely equivocal evidence exists relative to whether Johnson sustained any permanent injury as a result of the applica-

tion. Nonetheless, we acknowledge that Johnson's claim is not entirely without some basis. But even assuming the validity of Johnson's argument, that those issues are for jury resolution, as we later demonstrate, this claim must also fail because Van Hal enjoyed a qualified privilege immunizing him from the claim.

Johnson's final 42 U.S.C. § 1983 excessive force claim relates to his claim that after shooting out the tires on the truck, at a time when Johnson was out of the vehicle and the other officers had him surrounded and at a time at least one of them had already drawn his revolver, Van Hal pointed his service revolver at Johnson's head and threatened to shoot if he did not place his hands on top of his head.[9] Generally, the federal courts of appeal which have considered the issue have held that the mere threat of use of force, without more, is insufficient to trigger a 42 U.S.C. § 1983 excessive force claim. *See, e.g., Hinojosa v. City of Terrell*, 834 F.2d 1223, 1230 (5th Cir.1985); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988).[10] It is unnecessary in this case for us to address the issue. Even should we conclude that Van Hal's conduct was of such egregious nature as to its reasonableness as to create a jury question, his conduct, under the circumstances, came

---

9. In subsequent deposition during the course of these proceedings, Johnson indicated that he considered the threat as a "joke," and, he admitted he responded to the threat by saying, "Go ahead and shoot." However, it is clear that Van Hal's actions in pointing the gun and making the threat was contrary to the policy of the Jackson County Sheriff's Department respecting the handling of guns by its deputies.

10. The holdings of these cases are consistent with Model Code of Pre Arrangement Procedure, § 110.2(3) commentary at 284 (1975):

Subsection (3) authorizes the use of such force, other than deadly force, as is reasonably necessary to stop any person or vehicle, or to cause any person to remain in the officer's company. Although it is not envisaged that force would have to be used frequently, it would be frustrating and humiliating to the officer to grant him an authority to order persons to stop, and then ask him to stand by while his order is flouted. * * *

 * * * * * *

* * * Moreover, if force were not authorized to enforce an order to stop, in all probability it would be used anyway, because a person

who flees upon an order to stop will usually be subject to lawful arrest and thus the force authorized to effect an arrest.

It is only when the conduct of the officer in using force, or threatening to use force, is so egregious as to be constitutionally excessive will this type of claim be sustainable under section 1983. Such an egregious case was *Black v. Stephens*, 662 F.2d 181 (3d Cir.1981) *cert. denied sub nom. Stephens v. Black*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982), where a plain clothed officer, without identifying himself, stopped a car and brandished a gun in the face of and threatened to shoot the occupants although they had done nothing to provoke such actions.

under the protection of the umbrella afforded by the qualified immunity doctrine hereafter discussed.

 Finally, we address Johnson's claim that Van Hal's actions of shooting out the truck tires and pointing the gun and threatening to shoot constituted the use of "deadly force" for 42 U.S.C. § 1983 and Fourth Amendment purposes and, under *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (holding a state statute unconstitutional which provided "the officers may use all the necessary means to affect an arrest," where officers shot and killed an unarmed fleeing suspect). The United States Supreme Court has never defined "deadly force" for 42 U.S.C. § 1983 and Fourth Amendment purposes. Several circuit courts of appeal have seemingly followed the Model Penal Code definition of "deadly force." *Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir.1988); *Pruitt v. City of Montgomery*, 771 F.2d 1475, 1479 n. 10 (11th Cir.1985); *Ryder v. City of Topeka*, 814 F.2d 1412, 1416 n. 11 (10th Cir.1987); *cf. Mattis v. Schnarr*, 547 F.2d 1007, 1009 n. 2 (8th Cir.1976) (en banc) vacated as moot *sub nom. Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977). The Model Penal Code definition of "deadly force" is virtually identical to that in Minn. Stat. § 609.066, subd. 1, which defines it as: "force which the actor uses with the purpose of causing, or which the actor should reasonably know creates a substantial risk of causing, death or great bodily harm. The intentional discharge of a firearm in the direction of another person, or at a vehicle in which another person is believed to be, constitutes deadly force." Minn. Stat. § 609.066, subd. 1 (1988). We agree with the cited opinions of the circuit courts of appeal, that for 42 U.S.C. § 1983 and Fourth Amendment analysis purposes, application of the Model Code definition is reasonable in the light of the fact that the Supreme Court has seemingly adopted, in a large part, the Code's rule as to permissible use of deadly force. *See Garner*, 471 U.S. at 6 n. 7, 11–12, 105 S.Ct. at 1699 n. 7, 1701–02; *see also Pruitt v. Montgomery*, 771 F.2d at 1479 n. 10.

We conclude, therefore, that Van Hal did not employ "deadly force" either when he shot the tires or when effecting the arrest. Johnson was neither in the truck, nor apparently in the line of fire. In the latter instance, the most Van Hal did was threaten to use deadly force if Johnson failed to comply with his order to place his hands above his head. The majority of federal courts which have considered similar conduct by arresting officers have refused to equate such threats with the employment of "deadly force" because they recognize that some leeway must be afforded police officers to "stabilize" a potentially volatile situation by the threat of the use of force without incurring potential 42 U.S.C. § 1983 liability. This policy reason for refusing to extend potential liability to a mere threat of the use of deadly force appears to us to be valid. While, by hindsight, we now know Johnson was unarmed and not a felon, when Van Hal's conduct is judged against the circumstances which appeared to him at 2 a.m. on June 7, 1984, we cannot say his conclusion that it was necessary to display his weapon and threaten its use if Johnson failed to cooperate was unreasonable based on federal case law interpreting section 1983. In retrospect, we may concede he made a mistake in judgment, but, as the cited cases indicate, such mistake is insufficient to support imposition of "deadly force" liability under 42 U.S.C. § 1983 or the Fourth Amendment.

(2) Even if any of Johnson's section 1983 allegations raise factual issues which would normally require jury resolution, summary judgment may still be appropriate if Van Hal enjoyed qualified immunity from suit for his actions. Although 42 U.S.C. § 1983 does not specifically allow for any type of immunity, the United States Supreme Court has recognized that in appropriate circumstances, a governmental official may be entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Qualified immunity is available if the officer did "not violate clearly established stat-

utory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1981); *see also Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir.1989). Because no claim of qualified immunity was raised in *Graham v. Connor*, the Supreme Court of the United States declined to consider whether the defense is available to a peace officer even in response to an excessive force claim. *Graham*, 490 U.S. at —— n. 12, 109 S.Ct. at 1873 n. 12. However, a majority of the circuit court decisions, both before and after *Graham*, have held that the qualified immunity defense is a bar to a 42 U.S.C. § 1983 claim. *See, e.g., Calamia v. City of New York*, 879 F.2d 1025, 1033 (2d Cir. 1989); *Henry v. Perry*, 866 F.2d 657, 659 (3d Cir.1989); *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir.1989); *Chathas v. Smith*, 884 F.2d 980, 989 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1169, 107 L.Ed.2d 1071 (1990); *Hansen v. Black*, 885 F.2d 642, 644 (9th Cir.1989); *Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir. 1989); *Clark v. Evans*, 840 F.2d 876, 881–82 (11th Cir.1988); *cf. Martin v. Gentile*, 849 F.2d 863, 869 n. 7 (4th Cir.1988) (implicitly recognizing that qualified immunity may be available to officers who are accused of excessive force Fourth Amendment violations). *But cf. Holt v. Artis*, 843 F.2d 242, 246 (6th Cir.1988) (pre-*Graham* case holding that qualified immunity is not a defense to excessive force).

█ Simply stated, if the law the officer allegedly violated was "clearly established" there would exist no immunity, but, if not, qualified immunity would be available. *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738–39. The trouble, however, is that the *Harlow* opinion furnishes little guidance as to how to determine when a constitutional right is "clearly established." Courts, therefore, are left to ascertain whether the claimed violated right has been "clearly established" by comparing the facts of the case under consideration with other decided case facts. The Supreme Court of the United States addressed the issue again in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *Creigh-*

*ton* requires courts to look beyond violation of a *general* right. Alleging violation of a generalized right, even though "clearly established," would "convert the rule of qualified immunity * * * into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Creighton*, 483 U.S. at 639, 107 S.Ct. at 3039 (general right to be free from warrantless search of one's home absent probable cause or exigent circumstances was not sufficient; court must consider whether it was clearly established that particular circumstances did not constitute probable cause or exigent circumstances). The court explained that there is no doubt that the claimed right exists if the contours of the right "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. Furthermore, it is not required that "the very act in question has previously been held unlawful * * *." *Id.* Rather, "in the light of preexisting law the unlawfulness must be apparent." *Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039. This purports to be an objective test; the subjective intent of the officer is immaterial although the facts within the officer's knowledge are considered. *Id.* at 641, 107 S.Ct. at 3040; *see also Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir.1989). Although the court did not address the specific issue in *Graham*, it did indicate that the objectively reasonable test applies to the use of nondeadly, as well as deadly, force. *Graham*, 490 U.S. at —— n. 10, 109 S.Ct. at 1871 n. 10. However, it seems clear that proof of the use of excessive force, in and of itself, may be insufficient to establish a Fourth Amendment claim. Mistaken actions of the officer generated by the circumstances of the confrontation do not violate the Fourth Amendment proscription against unreasonable seizures if they were objectively reasonable at the time they occurred. *Graham v. Connor*, 490 U.S. at ——, 109 S.Ct. at 1872. Immunity applies "if officers of reasonable competence could disagree on this issue." *Malley v. Briggs*, 475 U.S. at 341, 106 S.Ct. at 1096.

Although dispute exists among the courts as to whether the issue of objective reasonableness is for the court or the jury, *compare, e.g., Skevofilax v. Quigley,* 586 F.Supp. 532 (D.N.J.1984) *with Thorsted v. Kelly,* 858 F.2d 571 (9th Cir.1986), we conclude the better rule to effectuate the underlying policy of *Harlow v. Fitzgerald,* at least in the setting of this case, is for the court to resolve the "clearly established" issue on summary judgment. That underlying policy contemplates that questions of qualified immunity "should be resolved at the earliest possible stage of the litigation." *Creighton,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6. This timing for resolution of the issue is deemed desirable because it permits officials to better serve by acting with "independence and without fear of consequences." *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739, quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). These "consequences" include the burden of submitting officials to the vicissitudes of trial. It is primarily for these reasons that qualified immunity provides *"immunity from suit rather than a mere defense to liability * * *."* *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in opinion). Thus, it was appropriate for the trial court to address this issue when it did.

With these principles in mind, it seems clear that Van Hal had probable cause to arrest Johnson, at least for fleeing a police officer under Minn.Stat. § 609.487 (1988), and, also to take him into custody. Moreover, it seems clear that he did not employ excessive or deadly force in shooting out the tires of the vehicle because Johnson was not in his vehicle or personally threatened by the shooting. Model Penal Code § 3.11(2); *see also* Minn.Stat. § 609.066(1) (1988). Most circuit courts of appeal, as indicated in part 1 of this opinion, have refused to classify the pointing of a gun at a suspect during the course of an arrest as being "unreasonable" because permitting police to use such threats may actually decrease the potentiality of violence. A reasonable police officer could have believed this action did not violate the U.S. Constitution. Van Hal also has qualified immunity for the handcuffing. Even assuming the handcuffs were applied too tightly and the use of force was excessive under the Fourth Amendment, Johnson did not complain about them to Van Hal, but only later, to Waldron. *Cf. Calamia v. City of New York,* 879 F.2d 1025 (2d Cir. 1989) (handcuffing "unreasonable" where suspect handcuffed for several hours and suspect complained to officer being sued). Therefore, the trial court's grant of summary judgment is affirmed.

(3) In addition to alleging violation of 42 U.S.C. § 1983, in his complaint Johnson alleges that Van Hal committed actions giving rise to tort claims for damages under Minnesota law. Those allegations in the complaint paralleled his 42 U.S.C. § 1983 claims, to-wit, false arrest, false imprisonment, battery, assault, and negligent and intentional infliction of emotional distress. Because we held as a matter of law Van Hal had probable cause to arrest Johnson, it is unnecessary to address his false arrest and false imprisonment claims, and we hold that summary judgment dismissing those state tort claims was appropriate.

Johnson alleges two battery claims: the first, the shooting of the truck tires by Van Hal, and, the second, the handcuffing. Battery is an intentional, unpermitted offensive contact with another. *Paradise v. City of Minneapolis,* 297 N.W.2d 152, 155 (Minn.1980). Its two operative elements are intent and offensive contact. *Schumann v. McGinn,* 307 Minn. 446, 452, 240 N.W.2d 525, 529 (1976). Accepting Johnson's statement of the facts—that the tire shooting occurred after the truck was stopped and after he was no longer in it, there was no battery because neither the requisite intent nor the contact existed.

Nor was Van Hal's handcuffing an actionable battery. Clearly, an officer in the circumstances here existing was permitted by law to apply handcuffs. Thus, the contact with the complainant during the course of applying the handcuffs only

became offensive and actionable if the officer used "excessive force." Johnson never complained to Van Hal at the time the handcuffs were applied, or later, that they were too tight. The only evidence existing which indicates the handcuffs were too tight are very minor bruises. This minimal evidence falls short of supporting an "excessive force" battery claim. But, in our view, even if it would support a claim, the claim would be barred by the official immunity Van Hal enjoyed which is later discussed.

■ To successfully maintain an action for intentional infliction of emotional distress, the claimant has the burden of establishing that the conduct was extreme and outrageous, intentional or reckless, and that it caused severe emotional distress. *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438–39 (Minn.1983). Even accepting Johnson's allegations as true, he fails to demonstrate the level of distress needed as an element of this type of cause of action. His "signs and symptoms of depression" fall far short of being that type of distress which "no reasonable man could be expected to endure * * *." *Hubbard*, 330 N.W.2d at 436 (quoting *Restatement (Second) of Torts* § 46 comment j (1965)). Johnson's actions and comments at the time of his arrest by Van Hal and in a later deposition corroborate that conclusion; he regarded the whole situation as a "joke." Accordingly, we hold that the trial court correctly granted summary judgment on this claim also.

Johnson claims that when Van Hal aimed the service revolver at him and threatened to shoot, he committed an assault, to-wit, that Van Hal unlawfully threatened to shoot him at a time when Van Hal had the present ability to carry the threat into effect. *Dahlin v. Fraser*, 206 Minn. 476, 478, 288 N.W. 851, 852 (1939). When Van Hal threatened to shoot Johnson if he did not put up his hands, he obviously had the ability to carry out the threat. Thus, unless the threat was lawful, an assault did occur.

The use of threatened force by a peace officer is lawful if it is a reasonable use of force when used in affecting an arrest. Minn.Stat. § 609.06(1)(a) (1988). The statute, however, does not further define what is reasonable force, and, therefore, provides us with minimal guidance. However, Minn.Stat. § 629.32 (1988), does place some limitation on what is reasonable force by providing that a peace officer "may not subject the person arrested to any more restraint than is necessary for the arrest and detention."

■ Viewing the claimed facts in the light most favorable to Johnson, we conclude that a fact issue exists whether Van Hal committed an assault. The employment of words such as "reasonable" and "necessary" in the statutes usually signals the existence of issues for factual resolution—ordinarily by a jury. At the time Van Hal made the threat, Johnson was stopped, his vehicles were immobilized, and two other armed police officers were on the scene, and at least one had drawn his revolver. Although Van Hal had probable cause to believe that Johnson had committed a misdemeanor or gross misdemeanor, he did not have probable cause to believe Johnson had committed a felony or that any of the officers at the scene needed protection from "apparent death or great bodily harm," which would have justified the threat of the use of deadly force. Minn.Stat. § 609.066 (1988). On the other hand, policy reasons exist that might justify Van Hal's action to "stabilize" the situation; all of which, in our view, highlights the existence of factual issues for jury resolution.

But, Van Hal claims, if that is true, he is entitled to official immunity from that state law claim. As distinguished from the "qualified immunity" afforded peace officers when addressing 42 U.S.C. § 1983 claims, under Minnesota law a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion. *Elwood v. Rice County*, 423 N.W.2d at 677. *See also Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976); *Johnson v. Steele County*, 240 Minn. 154, 164, 60

N.W.2d 32, 39–40 (1953). Generally, police officers are classified as discretionary officers entitled to that immunity. *Elwood*, 423 N.W.2d at 678; *see also Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937).

Whether official immunity applies requires the court to focus on the nature of the particular act in question. *Larson v. Indep. School Dist. No. 314*, 289 N.W.2d 112, 120 (Minn.1979). In this case, Van Hal seeks immunity for three acts: the tire shooting, the handcuffing, and the pointing of his revolver accompanied by the threat to shoot. As indicated, we have concluded there was no battery arising from the tire shooting nor from the handcuffing. But even if there was a battery during the handcuffing, it seems to us this presents the classic case of that type of exercise of discretion giving rise to official immunity.

However, an exception to the immunity doctrine exists if the officer acted maliciously or willfully. *Susla*, 311 Minn. at 175, 247 N.W.2d at 912. Whether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by a jury. *Elwood*, 423 N.W.2d at 679. Suffice it to say, facts exist which would permit a jury to infer that with respect to the pointing of the revolver and the threat to Johnson, Van Hal committed an assault, and in doing so acted maliciously and willfully. Therefore, on this issue we affirm the court of appeals and remand to the trial court for trial of the assault issue under state law only, but otherwise reverse the court of appeals and affirm the trial court grant of summary judgment on all other issues.

Affirmed in part, reversed in part, and remanded.