Everett CULBERSON, Respondent,

v.

Deborah CHAPMAN, et al., Appellants.

No. C5–92–1392.

Court of Appeals of Minnesota.

Feb. 23, 1993.

Mark S. Genereux, Douglas B. Fink Law Offices, P.A., St. Paul, for respondent.

Rebecca Egge Moos, Charles E. Lundberg, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for appellants.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Respondent Everett C. Culberson commenced this lawsuit alleging respondent Deborah Chapman, a chemical dependency counselor, and her employer respondent Riverside Medical Center (Riverside), are liable for Chapman's alleged unauthorized release of information concerning a death threat respondent made against a third party while in treatment.

Appellants assert the trial court erred in denying summary judgement under the immunity provision in Minn.Stat. § 148.976, subd. 2 (1988), which limits the liability of practitioners who erroneously warn third parties of violent threats made by a patient, if the disclosure is made in a good-faith effort to warn against the patient's violent behavior. We agree and reverse.

## FACTS

For purposes of this appeal, the facts must be viewed in a light most favorable to the non-moving party, i.e. respondent in the present case. *See Hauser v. Mealey*, 263 N.W.2d 803, 805 n. 1 (Minn.1978).

Respondent, an acknowledged marijuana user, was terminated from his employment at 3M in April 1984 for excessive absenteeism. At that time, John O'Neil was an employee assistance program counselor with 3M. Respondent believed O'Neil had betrayed him surrounding the circumstances of the termination.

Following arbitration, respondent was reinstated but again experienced serious attendance problems and was suspended several times in 1989. 3M required respondent to undergo a chemical dependency assessment and he was found to be chemically dependent. Respondent returned to work following the approval of a treatment plan. Respondent, however, never followed through with the plan and was indefinitely suspended in October 1989. On December 1, 1989, respondent was terminated from employment at 3M.

Respondent entered inpatient chemical dependency treatment at Riverside on December 6, 1989. Chapman was a senior chemical dependency counselor at Riverside. She had worked at Riverside since 1984, and had received yearly in-service training on the subject of patient confidentiality.

Respondent's treatment program included group sessions. Chapman was the counselor assigned to respondent's group. She was assisted by an intern, Lee Esterling, who would sometimes conduct a group session alone. Group sessions were also conducted by chemical dependency counselor Julie Mattson. Chapman reviewed respondent's file prior to their first contact and knew that respondent had been terminated from employment at 3M. She also knew that respondent was concerned that contact with 3M officials might jeopardize his job and insurance benefits.

In group sessions with Chapman, and on a one-to-one basis, respondent expressed his concern about the loss of his health insurance and his distrust of O'Neil resulting from the circumstances surrounding his 1984 termination. Chapman wrote in respondent's chart that he was angry and blamed O'Neil for the termination.

During a group session with Mattson on or around December 22, 1989, respondent stated that if he could "get away with it," he would kill "him" or follow "him" when "he" was driving after drinking and advise the police of the driving conduct. Respondent did not identify the person referred to as "him." Mattson advised respondent that if his comment was serious, she would have to report it. Respondent did not respond because he assumed Mattson knew

he was not serious. Mattson's notes in respondent's chart do not make reference to this incident.

Later that day during the afternoon group session, conducted by Chapman, respondent repeated the prior statement, although he again did not identify the person referred to as "him." Respondent never stated directly in any group session that he wanted to kill or harm Mr. O'Neil. Chapman never asked respondent if he was serious and never mentioned the statement to him.

Chapman considered respondent's statement one of the most significant he made during the course of treatment and she took it seriously. Yet, while Chapman's notes in respondent's chart make reference to his anger toward O'Neil, and while it would be normal procedure for her to chart a physical threat, Chapman's notes contain no reference to respondent's alleged threat against O'Neil.

Respondent was discharged from Riverside on December 26, 1989. During and following respondent's treatment, Chapman spoke with O'Neil several times. During one of the conversations, on or about December 27, 1989, Chapman told O'Neil that respondent had made a statement that he wished to kill O'Neil. O'Neil took the threat seriously.

Prior to contacting O'Neil, Chapman did not discuss the incident with her supervisor or any other person in authority at Riverside. The issue of warning a person of a patient's threat had never arisen before her, but Chapman was aware there was a duty to warn law in Minnesota.

Respondent filed this action, contending he was injured by Chapman's release of confidential information to his former employer. He asserts that had this information not been released, he would have been able to obtain his job back. The trial court denied appellants summary judgment, finding they were not immune from liability under Minn.Stat. § 148.976, subd. 2 and this appeal followed.

## ISSUE

Did the trial court err in determining appellants were not entitled to immunity under Minn.Stat. § 148.976, subd. 2 (1988) for warning a third party of a violent threat made by a patient?

## ANALYSIS

Ordinarily an order denying summary judgment is not appealable. An appeal, however, may be taken from an order which "in effect, determines the action and prevents a judgment from which an appeal might be taken." Minn.R.Civ.App.P. 103.-03(e).

In *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986) the Minnesota Supreme Court determined the denial of summary judgment based on immunity is an appealable order. The court noted that denying summary judgment on the ground of immunity from suit is a final judgment for purposes of appealability because the immunity is an immunity from suit rather than a mere defense and the immunity is effectively lost if a case is erroneously permitted to go to trial. *Id.*

On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no material issues of fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

The appellate court conducts an independent review of the record in light of the relevant law to determine if the lower court made the proper legal conclusion. *See Jadwin v. Minneapolis Star & Tribune Co.,* 367 N.W.2d 476, 483 (Minn.1985).

This appeal presents a purely legal question. A reviewing court need not give deference to a trial court's determination of a purely legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

No monetary liability and no cause of action may arise against a practitioner [1] for failure to predict, warn of, or take reasonable precautions to provide protection from a patient's violent behavior, unless the patient has communicated to the practitioner a specific, serious threat of physical violence against a specific, clearly identified or identifiable potential victim. Minn.Stat. § 148.975, subd. 2 (1988). A duty to warn to provide protection from violent behavior arises only under the limited circumstances specified in subdivision 2. *Id.*, subd. 3. The duty is discharged by the practitioner if reasonable efforts are made to communicate the threat to the potential victim. *Id.*

For purposes of this appeal, we assume Chapman was not under a legal duty to warn O'Neil because respondent never clearly identified O'Neil as the potential victim of his threat. Practitioners, however, may disclose confidences to third parties in a good-faith effort to warn against or take precautions against a patient's violent behavior for which a duty to warn does not arise under section 148.975. Minn.Stat. § 148.976, subd. 1 (1988). Furthermore,

No monetary liability and no cause of action * * * may arise against a practitioner * * * for erroneous disclosure of confidences to third parties in a good-faith effort to warn against or take precautions against a patient's violent behavior for which a duty to warn does not arise under section 148.975.

*Id.*, subd. 2.

The trial court viewed section 148.976, subdivision 2 as an affirmative defense, and determined appellants failed to establish the disclosure was made in a good-faith effort to warn O'Neil against respondent's violent behavior. The trial court noted several facts supporting its determination that Chapman may not have acted in good faith.

First, Chapman had established a professional relationship with O'Neil over several years and thus the communication may have been motivated more from a desire to protect O'Neil and 3M from potential litigation rather than from a good-faith belief the threat was serious. Second, because Mattson does not remember the threat and did not make note of it, there is an inference Mattson did not view the threat as serious. Third, when the threat was repeated in Chapman's group, Chapman did not confront respondent, she did not ask respondent to identify the person who was the subject of the threat, she did not discuss the threat with her co-workers, and she did not chart the threat. Thus there are inferences that Chapman did not view the threat as serious and that she acted hastily and with inadequate deliberation in communicating the threat to O'Neil.

The trial court concluded these facts bear directly upon Chapman's honesty of intent regarding the communication, and are sufficient to raise a genuine issue of material fact on the issue of "good-faith" under Minn.Stat. § 148.976, subd. 2. Accordingly, the court denied appellants summary judgment.

We conclude the trial court improperly applied section 148.976, subdivision 2 to the facts of this case. In enacting Minn.Stat. § 148.975 the legislature clearly intended to create a broad immunity from liability for practitioners who warn third parties of a patient's threats.[2] In the Civil Law Subcommittee, Senator Ember Reichgott, the chief author of the legislation, stated immunity would apply even if the practitioner was mistaken about whether the threat was severe enough to trigger the statutory duty to warn. Reichgott further stated, "Practitioners should take these comments by a violent patient seri-

---

1. The term "practitioner" includes chemical dependency counselors. Minn.Stat. § 148.975, subd. 1(c) (1988).

2. Where statutory wording is not explicit, contemporaneous legislative history may be considered. Minn.Stat. § 645.16(7) (1990). It is proper to consider tapes of committee meetings and floor debates. *Handle with Care, Inc. v. Dept. of*

*Human Servs.*, 406 N.W.2d 518, 522 (Minn. 1987). Statements made in committee discussions or floor debates are to be treated with caution. *Id.* Statement made, however, by the sponsor of a bill on the purpose or effect of the legislation are generally entitled to some weight. *Id.*

ously and should not be worried about the liability aspects." *Hearing on S.F. No. 2135 Before the Senate Judiciary Committee* (Feb. 28, 1986). Senator Allan Spear reiterated that the bill was to protect someone from being sued.

At the final hearing, the bill was amended to create a broader immunity by adding the "Optional Disclosure" provision codified in Minn.Stat. § 148.976. Therefore we do not view the statutory good-faith immunity in Minn.Stat. § 148.976, subd. 2 as an "affirmative defense." Rather, section 148.976, subdivision 2 creates an immunity from suit that bars any cause of action from arising in the first instance. *Cf. Johnson v. Morris,* 453 N.W.2d 31, 40 (Minn.1990) (qualified immunity provides *"immunity from suit* rather than a mere defense to liability") (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original).

■ Questions of immunity should be resolved at the earliest possible stage of the litigation. *See Johnson,* 453 N.W.2d at 40 (citing *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987)). Prompt resolution of the issue is desirable to allow persons to act independently and without fear of the consequences including the burden of submitting officials to the vicissitudes of trial. *Johnson,* 453 N.W.2d at 40. It is primarily for these reasons that immunity provides immunity from suit rather than a mere defense to liability. *Id.*

The immunity provision in Minn.Stat. § 148.976, subd. 2 dictates that a practitioner who acts in good faith is immune from liability for any cause of action—even if the practitioner was mistaken or negligent in issuing the warning. It is axiomatic that a legal immunity protects a person who would otherwise be subject to liability. *See Rico v. State,* 472 N.W.2d 100, 106–07 (Minn.1991).

■ A practitioner who has not been negligent or who properly complied with the statute could not be alleged to be liable in the first place, and thus would have no need for immunity. Therefore, immunity is not triggered until a claim has been made that an actor was negligent or otherwise at fault.

We also hold the trial court erred in adopting an extremely restrictive interpretation of the term "good-faith." We believe the trial court's definition, based on the definitions in the Uniform Commercial Code and *Black's Law Dictionary,* is too narrow to protect a practitioner who erroneously or negligently discloses a threat that is not sufficiently severe or serious to trigger the affirmative duty to disclose under Minn.Stat. § 148.975.

■ "Good-faith" must mean something more than a mere lack of negligence because if the actor used due care in deciding to disclose, and only disclosed where a duty to warn applied, then there would be no need for immunity at all. The concept of immunity presupposes the actor could be found negligent or otherwise at fault. Thus we conclude that for purposes of Minn.Stat. § 148.976, subd. 2, "good-faith" must be construed broadly to mean an "absence of actual malice." *Cf. Rico v. State,* 472 N.W.2d 100, 106–07 (Minn.1991) (official immunity protects a public official from liability for duties that call for the exercise of discretion unless the official is guilty of a willful or malicious wrong).

The trial court stated that it is "implicit * * * that the practitioner must exercise good faith in determining whether a patient's behavior is sufficiently violent to justify a warning." We disagree with this conclusion. Whether Chapman used due care in evaluating the need for a warning is wholly irrelevant to the immunity issue. A practitioner's immunity does not depend on whether the practitioner correctly guessed whether the patient's behavior was potentially sufficiently violent to justify a warning. The only issue is whether the act of warning was in good faith.

Nowhere in the complaint or the trial court's memorandum is there any allegation that Chapman acted with actual malice; rather the most respondent claims is that Chapman was negligent. There is no factual basis in the record to support a

finding that the warning to O'Neil was motivated by actual malice. Thus the trial court erred in finding a genuine issue of fact based merely on allegations of negligence or a lack of due care.

Immunity should apply to protect persons like Chapman from judicial second-guessing. Practitioners must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved. A practitioner's conduct, however, should not be protected when he or she has acted with actual malice.

While this may raise a fact issue for the jury, viewing the facts in a light most favorable to respondent, no reasonable jury could find Chapman acted with actual malice.[3] Whether or not she exercised due care is irrelevant. Thus there is no genuine fact issue here and summary judgment should have been granted for appellants. *Cf. Elwood v. Rice County*, 423 N.W.2d 671, 679 (Minn.1988) (summary judgment appropriate on the basis of official immunity where there was no evidence a police officer's actions were in bad faith or with malicious intent).

Accordingly, we reverse the trial court and remand for an entry of judgment for appellants.

## DECISION

Appellants actions are immune from liability under Minn.Stat. § 148.976, subd. 2. Therefore, the trial court erred in denying appellants summary judgment.

Reversed and remanded.

---

[3.] To defeat any evidence of malicious intent, the record shows that respondent did in fact threaten to kill someone and respondent's anger towards O'Neil was well known. Additionally, there was no evidence of ill will between Chapman and respondent. Thus Chapman had no motive to harm respondent.