**B.A. MJOLSNESS, Appellant,**

v.

**Lance William RILEY, Respondent,**

**Susan Marcotte, a/k/a Susan Rogers Marcotte, et al., Defendants.**

**No. C1–94–356.**

Court of Appeals of Minnesota.

Dec. 6, 1994.

B.A. Mjolsness, pro se.

Dean J. Dovolas, Minneapolis, for respondent.

Richard A. Lind, Lind, Jensen & Sullivan, Minneapolis, for defendants.

Considered and decided by SHORT, P.J., and PARKER and RANDALL, JJ.

## OPINION

SHORT, Judge.

On appeal from a grant of summary judgment, Bradley A. Mjolsness argues that Lance W. Riley is not immune from suit under Minn.Stat. § 253B.23, subd. 4 (1992).

## FACTS

Mjolsness and Riley were close friends and Riley was Mjolsness's personal attorney for over nine years. Their relationship changed when Riley suggested that Mjolsness get substance abuse treatment.

Mjolsness had a long history of depression. He received outpatient psychiatric treatment and took a prescription anti-depressant drug. While taking anti-depressant medication, Mjolsness continued to drink alcohol and to use cocaine and marijuana. In addition, Mjolsness talked to his friends and family about committing suicide.

On September 20, 1991, Mjolsness's mother, his sister, Riley, other friends, and a professional skilled in drug intervention went to Mjolsness's house to speak to him about their concerns for his well-being. They found a suicide instruction book entitled *Final Exit* on Mjolsness's living-room table. Mjolsness told the group that he was not interested in getting treatment for his drug and alcohol use and that he intended to kill himself.

Riley promptly telephoned an attorney specializing in civil commitment cases and then dialed "911." Riley told the "911" dispatcher that Mjolsness was suicidal and owned a shotgun and other weapons. The "911" dispatcher told Riley to try to secure Mjolsness's weapons. When police officers arrived at Mjolsness's house, Riley gave them Mjolsness's shotgun. Other members of the group told the officers about Mjolsness's condition. While at Mjolsness's house, the officers observed knives, a can of mace, and shotgun shells. The officers subsequently took Mjolsness into custody and transported him to the Hennepin County Crisis Intervention Center. After examining Mjolsness, Crisis Intervention Center personnel held him for observation and evaluation pursuant to Minn.Stat. § 253B.05, subd. 3 (Supp.1991) (emergency admission). Once the 72–hour emergency hold had expired, they discharged Mjolsness.

Following these events, Mjolsness's sister successfully urged the county attorney's office to serve a petition to commit Mjolsness. Mjolsness voluntarily appeared in the commitment proceeding. After examining Mjols-

ness, a court-appointed examiner recommended dismissing the commitment petition. The county attorney's office agreed with the examiner's recommendation, and moved the court for dismissal. Accordingly, the trial court ordered dismissal of the involuntary commitment proceeding against Mjolsness.

Mjolsness subsequently commenced an action against the county, the police officers, the Crisis Intervention Center, and numerous medical personnel. The trial court found these defendants to be immune from liability and granted their motion for summary judgment. We affirmed the trial court's determination. *Mjolsness v. State*, No. C0–92–1087, unpub. op. at 5, 1993 WL 597, at *2 (Minn. App. Jan. 5, 1993). Mjolsness then initiated this lawsuit against Riley, claiming that Riley's participation in the effort to commit him constituted legal malpractice, false imprisonment, and malicious prosecution. The trial court disagreed, found Riley to be immune from suit under Minn.Stat. § 253B.23, subd. 4 (1992), and granted summary judgment in Riley's favor. Mjolsness appeals this grant of summary judgment.

## ISSUE

Is Riley subject to liability for his role in the effort to commit Mjolsness under the Civil Commitment Act?

## ANALYSIS

■ On appeal from summary judgment, we must determine whether any genuine issues of material fact exist and whether the trial court correctly applied the law. Minn. R.Civ.P. 56.03; *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). We must view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

■ The Minnesota Civil Commitment Act, Minn.Stat. ch. 253B (1992), provides civil and criminal immunity for all persons involved in the commitment process who act in good faith:

All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act

pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

Minn.Stat. § 253B.23, subd. 4. This statute provides complete immunity from suit, not simply a defense to liability. *See id.* (statutory grant of immunity).

Case law defines bad-faith conduct as the commission of a malicious, willful wrong. *See Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (bad-faith conduct is the intentional doing of a wrongful act without legal justification or excuse, or the willful violation of a known right); *Elwood v. Rice County*, 423 N.W.2d 671, 677–79 (Minn.1988) (bad-faith conduct involves not merely erroneous judgment, but rather malicious intent); *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976) (bad-faith conduct involves a willful or malicious wrong); *Price v. Sheppard*, 307 Minn. 250, 261, 239 N.W.2d 905, 912 (1976) (bad-faith conduct involves acting with malice). This case requires us to consider whether Riley was acting out of good-faith concern for a friend or was committing a willful wrong when he telephoned "911" from Mjolsness's home on September 20, 1991.

The undisputed facts show that: (1) Mjolsness consumed alcohol and marijuana and used cocaine while taking prescription antidepressants; (2) Mjolsness was preoccupied with suicide; and (3) Riley was a long-time friend of Mjolsness. Mjolsness failed to come forward with any facts to support his allegation that Riley telephoned "911" in bad faith. *See* Minn.R.Civ.P. 56.05 (nonmoving party has burden of presenting specific facts showing there is a genuine issue for trial). Under these undisputed facts, the trial court properly found Riley immune under Minn. Stat. § 253B.23, subd. 4, because there is no evidence Riley's actions were malicious or constituted a willful wrong.

■ Mjolsness argues Riley is not entitled to immunity because Riley made a false report to the "911" dispatcher in violation of Minn.Stat. § 253B.23, subd. 3 (false reports). We disagree. First, there is absolutely no

evidence of a false report or any discrepancy in the information supplied by Riley. Bare allegations of willful misconduct without any supporting evidence are insufficient to defeat a motion for summary judgment based on "good faith" immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (bare allegations of malice are insufficient to overcome 42 U.S.C. § 1983 (1979)'s grant of qualified immunity in a motion for summary judgment). Second, the police officers made the ultimate decision to take Mjolsness into custody, and Crisis Intervention Center personnel determined that Mjolsness should be held for 72 hours. *See* Minn.Stat. § 253B.05 (detailing emergency admission process). In addition, the county attorney initiated the petition to commit Mjolsness pursuant to Minn.Stat. § 253B.07, subd. 2 based on information obtained from Mjolsness's family. The record shows that the information Riley told the "911" dispatcher was verified by the police and revalidated by the actions of the Crisis Intervention Center personnel, and the county attorney independently decided to file the petition to commit Mjolsness. Riley did not initiate the petition to commit Mjolsness and the information Riley gave the "911" dispatcher was not determinative in the effort to commit Mjolsness against his will. *See Rosvall v. Provost,* 279 Minn. 119, 123, 155 N.W.2d 900, 904 (1968) (one who merely lays facts before judicial official is not liable for resulting detention even though detention may have been erroneous); *Gifford v. Wiggins,* 50 Minn. 401, 404, 52 N.W. 904, 905 (1892) (person who merely brings complaint to magistrate in good faith and without malice is not liable for subsequent wrongful arrest).

Mjolsness also argues Riley is not entitled to immunity because the trial court ultimately dismissed the commitment petition. There is, however, no statute, case, or other authority to support Mjolsness's position. The statute's grant of immunity is designed to protect all persons who participate in the commitment process in good faith. *See Enberg v. Bonde,* 331 N.W.2d 731, 735 (Minn. 1983) (doctors who acted in good faith and complied with provisions for emergency commitment were immune from liability even

though subject of emergency commitment never was committed); *see also Reuter v. City of New Hope,* 449 N.W.2d 745, 750 (Minn.App.1990) (police officers entitled to qualified immunity under 42 U.S.C. § 1983 (1988) for their role in emergency involuntary commitment despite fact that subject of commitment was released from hospital within a short time after her arrival), *pet. for rev. denied* (Minn. Feb. 28, 1990). To hold Riley liable because Mjolsness was not ultimately committed would be contrary to the statute's broad grant of immunity. The statute's plain language unambiguously applies to *all* persons acting in good faith and its grant of immunity is not limited to persons who are successful in their efforts to commit someone. *See* Minn.Stat. § 253B.23, subd. 4 ("*All* persons acting in good faith * * * are not subject to *any* civil or criminal liability.") (emphasis added).

## DECISION

Mjolsness failed to offer any evidence that Riley acted in bad faith in participating in the effort to commit him under the Civil Commitment Act, Minn.Stat. ch. 253B (1992). Under these circumstances, there was no genuine issue of material fact precluding summary judgment in Riley's favor on the purely legal issue of good-faith immunity under Minn.Stat. § 253B.23, subd. 4 (1992).

**Affirmed.**