# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3420

_____

| | | |
|---|---|---|
| Charles Anderson, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Yellow Medicine County, a Political | * | |
| Subdivision of the State of Minnesota; | * | Appeal from the United States |
| Richard Blackwelder, individually, | * | District Court for the District |
| and as Sheriff of Yellow Medicine | * | of Minnesota. |
| County; | * | |
| | * | [UNPUBLISHED] |
| Defendants, | * | |
| | * | |
| Southwestern Minnesota Mental | * | |
| Health Center, Inc., a Minnesota | * | |
| corporation, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted:  June 12, 2002

Filed:  June 21, 2002

_____

Before HANSEN, Chief Judge, FAGG and BOWMAN, Circuit Judges.

_____

PER CURIAM.

Charles Anderson sued Chief Deputy Sheriff Richard Blackwelder (the Deputy Sheriff), Yellow Medicine County (the County) and Southwestern Minnesota Mental Health Center, Inc. (the Clinic) in Minnesota state court after the Clinic told the Deputy Sheriff that Anderson was suicidal and the Deputy Sheriff forcibly escorted Anderson to the state hospital. Anderson claims assault, battery, excessive use of force, breach of privacy, defamation and violation of federal rights under 42 U.S.C. § 1983. Because Anderson's § 1983 claim presents a question of federal law, the Deputy Sheriff and the County removed the case to federal district court. See 28 U.S.C. §§ 1331, 1441-46 (1994).

Anderson's claims arise from two series of interactions with the Clinic and the Sheriff's Office. In the first series, Anderson's step-son, a therapist at the Clinic, called Anderson at the request of a mutual friend. The step-son became concerned that Anderson was suicidal and later called the Sheriff's Office. The Sheriff's Office radioed a deputy to check on Anderson. The deputy spoke with Anderson, then left. Several months later, in the second series of events, Anderson called the Clinic to complain about the step-son's earlier call to the Sheriff's Office and the broadcast of his depressed and suicidal state over the police radio. During his conversation with the Clinic manager, a licensed psychologist, Anderson spontaneously discussed his depression, difficulty with alcoholism, use of antidepressant medication, increasing isolation, and possession of firearms. Anderson stated he was at the end of his rope and whether he kills himself depends on the day. Anderson admitted he had a bad morning and had been drinking, but stated he was presently fine. Despite stating he was fine, Anderson was crying and hung up the phone while the Clinic manager was still speaking. The Clinic manager then notified the Deputy Sheriff that Anderson was suicidal, and further requested the Deputy Sheriff not use police radios when contacting Anderson. The Deputy Sheriff responded to Anderson's house without the use of radios. After Anderson refused to comply with the Deputy Sheriff's directions and Anderson kicked the Deputy Sheriff, the Deputy Sheriff forcibly handcuffed Anderson and transported him to the state hospital.

The district court[*] granted the Clinic's motion for summary judgment, finding the Clinic was immune from liability for warning others of Anderson's threats of harm under Minnesota Statutes § 148.975, and Anderson failed to show the necessary elements of the invasion of privacy and defamation claims. The district court then certified the order as final under Federal Rule of Civil Procedure 54(b). Contrary to Anderson's claim, the district court did not have diversity jurisdiction because the parties are not citizens of different states and the amount in controversy did not exceed $75,000. 28 U.S.C. § 1332. Because the federal and state claims arose out of the same operative facts, the district court had supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 728 (1966). Anderson appeals the final order granting summary judgment to the Clinic. Having reviewed the record de novo and considered the facts and all reasonable inferences that can be drawn from them in the light most favorable to Anderson, we conclude the district court correctly granted summary judgment to the Clinic. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

Anderson disputes his status as a client, arguing he was not a current or past client of the Clinic and he did not request services. Because he was not a client, Anderson argues the Clinic may not assert immunity under Minnesota Statutes § 148.975. The Clinic argues that Anderson was a client because he received a counseling service from the Clinic manager during the forty-five minute phone call. Minn. Stat. § 148.89, subd. 2a. Although we agree with the district court that the conversation between Anderson and the Clinic manager appears more like a counseling session than a discussion of a complaint, we decline to decide that Anderson was a client as a matter of law. Because we can affirm a judgment on any appropriate grounds, see Myers v. Price, 463 N.W.2d 773, 775 (Minn. Ct. App. 1990), and the availability of immunity is a question of law best resolved at the

---

[*]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

earliest possible stage in the litigation, we affirm the Clinic's immunity from suit under Minnesota Statutes § 253B.  See Rehn v. Fischley, 557 N.W.2d 328, 332 (Minn. 1997).

Minnesota Statutes § 253B governs civil commitment of persons who are mentally ill and a danger to themselves or others.  If an officer has reason to believe a person is mentally ill and in imminent danger of injuring himself, Minnesota authorizes peace officers, like the Deputy Sheriff, and health officers, like the Clinic manager, a licensed psychologist, to take a person into custody and transport the person to a treatment facility.  See Minn. Stat. § 253B.05 (2000) (providing authority for emergency hold before civil commitment proceedings); see also Minn. Stat. § 253B.02 (2000) (defining health and peace officers).  All persons participating the civil commitment process in good faith are immune from any civil or criminal liability, regardless of whether the detained person is actually civilly committed.  See Minn. Stat. § 253B.23, subd. 4 (2000); Mjolsness v. Riley, 524 N.W.2d 528, 531 (Minn. Ct. App. 1994). The Deputy Sheriff asserted § 253B immunity, claiming that he responded to the Clinic's request for intervention under the civil commitment statute.  Although the Clinic did not assert immunity under § 253B, under Minnesota law, immunity is not waived even if it is not pleaded in the answer.  See Rehn, 557 N.W.2d at 332-33.  At oral argument, Anderson raised no objection to our consideration of § 253B immunity sua sponte.  Thus, we conclude the Clinic is immune from suit and liability under § 253B for the phone call to the Sheriff's Office that triggered the Deputy Sheriff's response under the civil commitment statute. Mjolsness, 524 N.W.2d at 531 (holding friend who called 911 reporting Mjolsness was suicidal is immune under § 253B); Culberson v. Chapman, 496 N.W.2d 821, 824-25 (Minn. Ct. App.  1993) (holding immunity protects from liability and from defending a lawsuit).  The record shows Anderson was threatening suicide and the Clinic manager acted reasonably and in good faith by notifying the Deputy Sheriff of Anderson's mental state.  Minn. Stat. § 253B.05 (2000).

We thus affirm the district court's grant of summary judgment in favor of the Clinic on modified grounds.  We deny the Clinic's motions to strike portions of Anderson's briefs and addendums.  Although the contested submissions were not before the district court, accepting the submissions does not change the disposition on appeal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.