# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2558

_____

| | | |
|---|---|---|
| Essex Insurance Company, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Janet C. Davidson, as Trustee for the | * | |
| heirs of Milton Davidson, Deceased; | * | |
| South Metro Human Services, a | * | |
| Minnesota Non-Profit Corporation, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted:  March 16, 2001

Filed:  May 1, 2001

_____

Before MURPHY, LAY, and BYE, Circuit Judges.

_____

LAY, Circuit Judge.

## I.  Background

South Metro Human Services (South Metro) is a non-profit corporation that provides social services to persons with mental disabilities.  South Metro contracted with Essex Insurance Company (Essex) for liability coverage.  South Metro's policy covered all damages resulting from a "wrongful act."  The policy defined "wrongful

act" as "any negligent act, error or omission in the rendering or failure to render professional services of the type described in the declaration." The policy also included several exclusions, including an assault and battery exclusion (the battery exclusion), which denied any coverage arising out of "Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person."

In 1996, Ricky Davidson was receiving treatment from South Metro for schizophrenia. On May 14, 1996, Ricky's mother, Janet Davidson, called South Metro asking for assistance with her son. A South Metro employee visited the Davidson home, spoke with Ricky and his father, Milton Davidson. Unfortunately, sometime after the South Metro employee left the Davidson home, Ricky Davidson killed his father.

Ricky Davidson was charged with second-degree murder in state district court. The state court determined that Ricky Davidson was not guilty by reason of mental illness, concluding that he was "laboring under such defective reasoning that he was incapable of appreciating the nature of his acts or that they were wrong." State v. Rick William Davidson, No. 96-1774, slip op. at 4 (Minn. Dist. Ct. July 19, 1996). Not long after, Janet Davidson sued South Metro alleging three counts of negligence on the part of South Metro and its employee.

In 1999, Essex filed suit seeking a declaratory judgment in the United States District Court for the District of Minnesota. Essex asked the district court to declare that the battery exclusion protected Essex from liability for any judgment stemming from Ricky Davidson's murder of his father. The district court, the Honorable Paul A. Magnuson, Chief Judge, presiding, rejected Essex's arguments, holding the battery exclusion was inapplicable. The district court reasoned that since Ricky Davidson was found not guilty by reason of mental illness, he could not form the intent necessary to

commit a battery against his father. Thus, since Ricky Davidson could not, as a matter of law, commit a battery against his father, the battery exclusion did not apply and Essex's policy covered South Metro's damages flowing from Ricky Davidson's attack on his father. We affirm the district court's ruling.

## II. Discussion

The only issue in this case is whether the battery exclusion applies to Ricky Davidson's murder of his father, which naturally leads to the question of whether he committed a battery against his father.[1] Under Minnesota law, a battery includes two elements: (1) an offensive or harmful contact; and (2) an intent to cause such offensive or harmful contact. See Johnson v. Morris, 453 N.W.2d 31, 40 (Minn. 1990). There is no question that Ricky Davidson's murder of his father satisfied the harmful contact element. The issue before us is whether the state court's finding that Ricky Davidson was not guilty of killing his father by reason of mental illness negates, as a matter of law, his ability to form the intent to commit a battery, and thus renders the battery exclusion inoperable. This is a question of insurance contract construction that we review de novo. See Bell Lumber and Pole Co. v. U.S. Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

In State Farm Fire & Casualty Co. v. Wicka, 474 N.W.2d 324 (Minn. 1991), the Minnesota Supreme Court decided a closely related issue. The issue in Wicka was whether an intentional act exclusion[2] in an insurance policy applies to injuries resulting

---

[1]South Metro raises a variety of other arguments to support the district court's ruling. In light of our disposition of the main issue, we need not reach these arguments.

[2]An intentional act exclusion is almost, but not quite, the same as the battery exclusion. The intentional act exclusion in Wicka reads as follows: "Medical Payments to Others do not apply to: (a) bodily injury or property damage which is expected or intended by the insured." Wicka, 474 N.W.2d at 326.

from acts committed by a person suffering from a mental illness. The <u>Wicka</u> court noted that intent includes two elements: a cognitive element and a volitional element. Both elements must be present for an individual to intend to cause bodily injury, and either may be affected by a mental illness. <u>Id.</u> at 331. Given that these two elements combine to form intent, <u>Wicka</u> held:

> We hold, therefore, that for the purposes of applying an intentional act exclusion . . . an insured's acts are deemed unintentional where, because of mental illness or defect, the insured does not know the nature or wrongfulness of an act, or where, because of mental illness or defect, the insured is deprived of the ability to control his conduct regardless of any understanding of the nature of the act or its wrongfulness.

<u>Id.</u>

As Essex repeatedly points out, however, <u>Wicka</u> is not necessarily controlling. Essex argues <u>Wicka</u> dealt with an intentional act exclusion rather than the battery exclusion present in South Metro's policy. Essex correctly argues that an intentional act exclusion covers only situations where "the insured intended the harm" that resulted from his acts rather than merely intending the act that caused the harm. <u>Id.</u> at 329. In contrast, Essex argues that the battery exclusion applies when there is proof of intent to act but no proof of intent to injure. This is so because to commit a battery one need not intend the harm that results from an act. <u>See</u> <u>Kinikin v. Heupel</u>, 305 N.W.2d 589, 593-94 (Minn. 1981) (allowing battery verdict against surgeon who engaged in unauthorized breast removal, despite the physician's intent to heal patient). Thus, Essex argues that <u>Wicka</u> is inapplicable since it dealt with a separate issue.

---

Essex relies heavily, indeed almost exclusively, on the difference between the intentional act exclusion and the battery exclusion. We will deal with Essex's arguments <u>infra</u>.

There are a number of problems with Essex's argument. Even assuming Essex's interpretation of the difference between the battery exclusion and the intentional act exclusion is correct, it draws the wrong conclusions from the distinction. Essex relies on a conclusion from the trial court's decision in Ricky Davidson's murder trial: "the Court finds . . . that the Defendant, while armed with a dangerous weapon, to-wit: a knife, caused the death of Milton Davidson by stabbing him in the chest and that he acted with the *intent to effect the death* of Milton Davidson." State v. Rick William Davidson, No. 96-1774, slip op. at 4 (Minn. Dist. Ct. July 19, 1996) (emphasis added). Essex believes this finding by the trial court shows "Davidson intended to effect the death of his father" so "the conclusion he intended his act and therefore committed a battery is inescapable." (Essex Reply Br. at 6). But this argument runs afoul of Wicka. The language of the trial court means not only that Ricky Davidson intended to act, but that he intended to cause injury to his father. Were we to find this isolated statement from the trial court controlling, we would necessarily rule, despite Ricky Davidson's insanity, that his actions were covered even by an intentional act exclusion, since, at least according to this statement, he acted with the intent to cause injury to his father. This conclusion would run directly contrary to the Minnesota Supreme Court's decision in Wicka.

Further, Essex's reliance on this isolated statement from the trial court overlooks the context in which the trial court made that statement. The state court conducted a bifurcated trial, first determining whether Ricky Davidson was guilty of murder, and second whether he suffered from a mental illness. Thus, when the state court wrote that Ricky Davidson killed his father with the requisite intent, it was merely finding that the statutory elements of second degree murder were satisfied, including intent. It then moved to the second question, finding that Ricky Davidson suffered from a mental illness that made him not guilty for his crime. The trial court did not face, and had no reason to be concerned with, the question we face: whether Ricky Davidson's insanity precluded his ability to form the intent to commit a battery.

-5-

An examination of <u>Wicka</u> and the intent necessary to commit a battery shows that Ricky Davidson's mental illness precludes his ability to form the requisite intent under Minnesota law. While Essex is correct that the battery exclusion is broader than the intentional act exclusion, it is not so broad as Essex believes. True, a battery does not require an intent to injure, but it does require an intent to cause the offensive contact at issue. <u>See</u> <u>Schumann v. McGinn</u>, 240 N.W.2d 525, 529-30 n.4 (Minn. 1976) ("(1) An actor is subject to liability to another for battery if (a) he acts *intending to cause* a harmful or offensive contact with the person of the other.") (<u>quoting</u> RESTATEMENT (SECOND) OF TORTS § 18 (1965)) (emphasis added). The battery exclusion is thus broader than an intentional act exclusion since it covers an intent to cause offensive contact as well as an intent to cause injurious contact. Essex is wrong, however, when it suggests that the battery exclusion applies when there is only an intent to act: a battery necessarily demands either an intent to cause harm or an intent to cause offensive contact.

Even though <u>Wicka</u> concerned an intentional act exclusion rather than the battery exclusion before us, we have no reason to believe that the slight difference between the two exclusions would cause the Minnesota Supreme Court to retreat from <u>Wicka</u>. The <u>Wicka</u> court held that an insane person, within the meaning of the criminal law,[3] lacked the cognitive ability to form the intent to injure another. <u>See</u> <u>Wicka</u>, 474 N.W.2d at 330-31. As we noted above, despite Essex's erroneous arguments, the only difference between an intentional act exclusion and a battery exclusion is that the battery exclusion includes situations where the actor has the intent to cause either offensive or harmful contact, while an intentional act exclusion only covers situations where the actor has the intent to cause harmful contact. There is no appreciable difference, however, between the intent to cause harmful bodily contact and the intent to cause

---

[3]The <u>Wicka</u> court repeatedly noted that the mental illness standard it was describing was more lenient than the mental illness standard in Minnesota criminal law. <u>See</u> <u>Wicka</u>, 474 N.W.2d at 330.

offensive bodily contact such that an insane person could form the latter but not the former.  If mental illness defeats the ability to "choose" to cause harm and to "appreciate the choice" to cause such harm, mental illness necessarily defeats the ability to "choose" offensive contact and "appreciate the choice" to cause offensive contact.  Id. at 330.

Based upon Wicka, we believe the Minnesota Supreme Court would hold that a mentally ill person cannot form the intent to cause harm or to cause offensive bodily contact.  Since one of those two forms of intent are necessary for a battery, and Ricky Davidson was judged to suffer from a mental illness that negated his criminal responsibility for the death of his father, it follows that Ricky Davidson could not have formed the intent to commit a battery against his father.  Therefore, the battery exclusion in South Metro's policy does not relieve Essex from providing South Metro coverage for any damages that resulted from Janet Davidson's lawsuit.  The district court's decision is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-